UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DOUGLAS BRUCE,                          )     CASE NO.:  1:23-cv-371
                                        )
            Plaintiff,                  )     JUDGE BRIDGET MEEHAN BRENNAN
                                        )
v.                                      )
                                        )     **MEMORANDUM OPINION**
CITY OF MAPLE HEIGHTS, OHIO,            )     **AND ORDER**
                                        )
            Defendant.                  )

Before the Court is Defendant's Motion for Summary Judgment.  (Doc. No. 14.)  Plaintiff

responded in opposition (Doc. Nos. 17, 18), and Defendant replied (Doc. No. 19).  For the

reasons that follow, Defendant's motion is GRANTED.

I.      **Facts**

Plaintiff Douglas Bruce has lived in Colorado Springs, Colorado since 1986.   (Doc. No.

18 at 182 ¶ 3.)  Throughout that time, he used a post office box in Colorado Springs for his mail

(*Id.*; *see also* Doc. No. 14-1 at 82 ¶ 6.)  That post office box address is P.O. Box 26018,

Colorado Springs, Colorado 80936.  (Doc. No. 18 at 182 ¶ 3.)  Plaintiff "owns about 50

properties in nine states."  *Bruce v. City of Miamisburg, Ohio*, No. 23-3080, 2023 U.S. App.

LEXIS 27217 at *1 (6th Cir. Oct. 11, 2023), *reh'g denied*, (6th Cir. Nov. 15, 2023), *cert. denied*,

144 S. Ct. 1118 (2024).

Plaintiff was the owner of a parcel of real estate located at 5254 Beech Avenue, Maple

Heights, Ohio (the "Property").  (Doc. No. 18 at 182 ¶ 2; *see also* Doc. 14-1 at 81-82 ¶¶ 6-7.)

According to Cuyahoga County property records referenced in Defendant's motion, Plaintiff

purchased the Property for $2,200 in August 2013.  (*See* Doc. 14-1 at 82, 91.)

1

On or around January 14, 2015, the Building Department for the City of Maple Heights confirmed that Mr. Bruce was the owner of the Property by performing a lien search and a review of the Cuyahoga County Fiscal Officer's Real Property database.  (Doc. No. 14-1 at 81-82 ¶¶ 6-7; *see also* Doc. No. 17 at 143.)  The tax bill summary for the Property showed Plaintiff's tax mailing address as his post office box in Colorado Springs.  (*Id.*)

The former Maple Heights Building Department Commissioner Rick Loconti attested to several pertinent facts.  Beginning in December 2013, the City issued violation notices for the Property.  (Doc. No. 14-1 at 81 ¶ 5.)  On January 25, 2015, the City issued a violation notice, citing broken gutters, excessive water damage, yard debris, and shrub overgrowth.  The notice ordered that the house be re-roofed and that the garage be removed and replaced.  (*Id.* at 85.)  This was the fourth time over two years that the City issued violations for the same problems.  (*Id.*)

On February 2, 2015, the Building Department issued an Order of Nuisance Abatement, which was signed by Commissioner Loconti on February 9, 2015.  (*See* Doc. No. 14-1 at 84.)  Effective as of February 2, 2015, the document ordered the owner(s) of the Property to abate the nuisance and safety hazards at the Property.  (*Id.*)  In the event that the owner failed to do so himself within thirty days, the order indicated that the City would demolish the structures.

In his affidavit in support of Defendant's motion, Mr. Loconti attests to the following with regard to notice:

> On March 23, 2015, the Building Department mailed a copy of the February 9, 2015 Demolition Order and the January 25, 2015 Violation Notice by USPS certified mail, article no. 7007 0220 003 2419 8265, to Douglas Bruce at P.O. Box 26018, Colorado Springs, CO 80936.  A "green card" return receipt for the certified mail was returned to the City's Law Department showing a received by signature and a USPS delivery date stamp of March 28, 2015.

(Doc. No. 14-1 at 82 ¶ 8.)  A copy of the signed, returned green card is in the record.  (Doc. No.

14-1 at 86-87, 97-98.)  The printed name under the signature on the green card appears to be "J. Wright."  (*See id.*)

In response, Plaintiff emphasizes that the green card does not bear his signature.  (Doc. No. 17 at 144.)

> Mr. Bruce does not know who signed for the "green card," but it was not him. As such, Mr. Bruce did not sign for this delivery, it was not delivered to him, and he did not receive whatever was contained in the package that was mailed.

(*Id.*)

On or around May 26, 2015, the mayor of Maple Heights signed a Notice to Proceed, which authorized the Cuyahoga County Land Reutilization Corporation to demolish the structures on the Property.  (Doc. No. 14-1 at 82, 93.)  The mayor of Maple Heights previously had been authorized by City Council to enter into a Contract with the County Land Bank to participate in its demolition fund program.  (*Id.*)

On or about June 16, 2015, the County Land Bank completed an Acquisition Assessment of the Property, complete with pictures of the structures on the Property.  (Doc. 14-1 at 110-17.) Like Commissioner Loconti, the County Land Bank recommended demolishing the structures on the Property.  (Doc. No. 14-1 at 110.)

> This property is really damp inside and the walls are collapsing[.]  [T]he HVAC system is a ancient [*sic*] gravity system.  The property is in terrible shape but it is in a borderline area.  Property has been poorly maintained.  This property is slated for demolition by the City of Maple Heights and it should come down.

(*Id.*)

On October 5, 2015, the structures were demolished.  (Doc. No. 14-1 at 82 ¶ 12.)  On November 10, 2015, Doug Sawyer, an attorney for the County Land Bank, executed an affidavit that provided in pertinent part:

[T]he Cuyahoga County Land Reutilization Corporation (the "CCLRC") acting as agent for the City of Maple Heights, Ohio (the "Municipal Corporation") pursuant to division (E) of Ohio Revised Code Section 715.261, who declares that:

l.    the CCLRC is the duly organized and validly existing county land reutilization corporation under Chapter 1724 of the Ohio Revised Code for Cuyahoga County, Ohio (the "County") . . . .

2.    the CCLRC has entered into an agreement with the Municipal Corporation to act as its agent for demolition of the hereinafter defined Premises under and in accordance with Ohio Revised Code Section 715.26l(E);

3.    the CCLRC has, at the request of the Municipal Corporation after the Municipal Corporation's compliance with the provisions of its Charter and/or Ordinances or Ohio Revised Code Section 715.26, caused the demolition of the structures heretofore located upon the property whose common address is: 5254 Beech Ave., Maple Heights, Ohio 44137 . . . (hereinafter, the "Premises"); and

4.    the CCLRC commenced the demolition of the structures on or about October 5, 2015; and

5.    the total cost, as defined in Ohio Revised Code Section 715.261, of such demolition was $ 9,435.00 (hereinafter, the "Total Cost").

AFFIANT further declares that pursuant to subdivision (B)(1) of Ohio Revised Code Section 715 .261 Affiant now certifies the Total Cost for the demolition of the structures upon the Premises to the Fiscal Officer of the County . . . who shall place the costs upon the tax list and duplicate.

AFFIANT further declares that in accordance with Section 715.26 l(B)(l) of the Ohio Revised Code (1) the Total Cost is a lien upon such lands from and after the date the costs were incurred . . . .

(Doc. No. 14-1 at 118.)  On November 23, 2015, Sawyer's affidavit was recorded on the

permanent parcel number of the Property with the Cuyahoga County Recorder.  (Doc. No. 14-1

at 82 ¶ 12.)[1]

---

[1] Commissioner Loconti's affidavit concludes by attaching a copy of the County Land Bank invoice dated November 10, 2015, for demolition costs.  (Doc. No. 14-1 at 120.)  Commissioner

Plaintiff denies receiving any notices, invoices, or other demolition-related documents. (Doc. No. 182-84.)  On February 24, 2023, Plaintiff filed this suit under Section 1983, challenging the demolition of the Property on Fifth, Eighth, and Fourteenth Amendment grounds.  (Doc. No. 1.)

Plaintiff does not dispute the City's issuance of violation notices, nor does he challenge the descriptions of water damage and disrepair.  (Doc. No. 17 at 142-43.)  Plaintiff does not deny or challenge the legitimacy of safety concerns resulting therefrom.  (*See id.*)  However, Plaintiff urges that he never received any notices of violations or a copy of the demolition order.  (Doc. No. 18 at 183 ¶¶ 5-7.)  Plaintiff's Complaint alleges:

> 11.  Plaintiff did not receive any proper notice from Defendant regarding any maintenance of other issues with the building, and/or proper notice of the issuance of fines or orders in connection with the same

> 12.  Regardless, the demolition of a valuable single family home for menial maintenance or other similar issues constitutes an excessive fine under the 8th Amendment of the United States Constitution . . . .

> 13.  Upon information and belief, the City of Maple Heights has issued fines, penalties, tax liens, and other charges against the Property which also constitute excessive fines under the 8th Amendment of the United States Constitution.

> 14.  Furthermore, Plaintiff never received any notice in advance of the demolition of the building on the Property and he therefore did not have the ability to contest the same.

> 15.  By demolishing the building without notice and due process, Defendant deprived Plaintiff of his property in violation of the Fifth Amendment of the United States Constitution and denied him his procedural due process rights guaranteed by the Fourteenth Amendment of the United States Constitution, as well as his substantive due process rights also guaranteed by the United States Constitution . . . .

---

Loconti also attests that the County Land Bank mailed that invoice to Plaintiff's post office box in Colorado Springs on November 10, 2015.  (Doc. No. 14-1 at 83 ¶ 13.)

(Doc. No. 1 at 3 ¶¶ 11-15.)  Plaintiff seeks damages in excess of one million dollars.  (*Id.* ¶ 16.)

## II.    Law and Analysis

### A.    Standard of Review

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 152 (6th Cir. 2005) ("The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.").

A "material" fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted).  "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light

6

most favorable to the party opposing the motion." *Id.*; *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.,* 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting or disputing a fact must cite evidence in the record or show that the record establishes either the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) and (e).  Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs.  Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne*, 767 F.3d at 530.

Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its claim or defense to defeat the motion for summary judgment. *See Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).  The mere existence of a scintilla of evidence to support a plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.*

### B.  Statute of Limitations

Because Section 1983 does not expressly include a statute of limitations, the Supreme Court has stated that courts must borrow the limitations period applicable to personal injury actions in the state in which the action arises.  *Wilson v. Garcia*, 471, U.S. 261, 275-76, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).[2]  And if the state in which the action arises recognizes different limitations periods for different forms of personal injury, the state's residual personal injury limitations period will apply.  *Owens v. Okure*, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

The Sixth Circuit has explained further:

> Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles.  In § 1983 cases, state law determines which statute of limitations applies, while federal law determines when the statutory period begins to run.  Because § 1983 actions are best characterized as personal injury actions, federal courts apply the statute of limitations governing personal injury actions in the state where the action was brought.

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 868 (6th Cir. 2020) (quotations and citations omitted).

> [I]t has been well established that a § 1983 federal civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action.  A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. In this objective inquiry, courts look to what event should have alerted the typical lay person to protect his or her rights.  At that point, the plaintiff has a complete and present cause of action," such that he can file suit and obtain relief.

*Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015).

---

[2] Wilson was partially superseded by a later-enacted "catch-all" statute of limitations period for actions brought pursuant to any federal statute enacted after 1990.  *See* 28 U.S.C. § 1658; *see also Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 377-81, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).  Section 1658 does not apply here.

Accordingly, the applicable limitations period for Plaintiff's claims is two years.[3]  *Beaver St. Invs., LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 826 (6th Cir. 2023); *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).  The decisive question is when that limitations period began to run on Plaintiff's causes of action.

Plaintiff's claims center on the demolition of his Property, as well as fees, fines, and violation orders that preceded or prompted the demolition.  In Count One under the Fifth and Fourteenth Amendments, Plaintiff challenges the City's fees and fines against his Property without proper notice (Doc. No. 1 at 4 ¶¶ 18, 20), as well as the City's deprivation of that Property (*id.* ¶¶ 19, 21).  In Counts Two (procedural due process) and Three (substantive due process) under the Fourteenth Amendment, Plaintiff challenges the City's practice of issuing fines and orders for "failing to maintain the Property and subsequently demolish the building thereon, all without notice to the property owner."  (*Id.* at 5-6 ¶¶ 27, 33.)  Plaintiff contends in these counts that the City "unlawfully deprived Plaintiff of his private property and denied him his substantive and procedural due process rights[.]"  (*Id.* ¶¶ 28, 35.)  Finally, in Count Four under the Eighth and Fourteenth Amendments that the City's fines and demolition were non-remedial, punitive, and excessive.  (*Id.* at 7 ¶¶ 41-45.)  "Directly at issue here is the phrase 'nor excessive fines imposed,' [in the Eighth Amendment] which limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense."  *Timbs v. Indiana*, 586 U.S. __, 139 S. Ct. 682, 687 (2019).  (*See* Doc. No. 1 at 8 ¶ 46.)

---

[3] Plaintiff does not dispute that the Sixth Circuit applies Ohio's two-year statute of limitations to Section 1983 claims like those brought here.  (Doc. No. 17 at 155.)  Instead, he advocates for a change in controlling precedent and argues for a "uniform statute of limitations for all Section 1983 litigation . . . ."  (*Id.*)  But in a footnote, Plaintiff concedes that this argument is likely unavailing, which it is, and states his intention to preserve it for appeal.  (*Id.*)

This case is substantially similar to *Bruce v. City of Miamisburg, Ohio*, No. 23-3080, 2023 U.S. App. LEXIS 27217, 2023 WL 6623194 (6th Cir. Oct. 11, 2023), *reh'g denied*, (6th Cir. Nov. 15, 2023), *cert. denied*, 144 S. Ct. 1118 (2024).  In that case, "Douglas Bruce sued the City of Miamisburg for demolishing, as public nuisances, two buildings that Bruce had bought but never maintained.  The district court granted summary judgment to the City on limitations grounds."  *Id.* at *1.  There, "the City attempted to send any number of notices to Bruce about [his] buildings' condition: that their lawns were unmowed, that trash and debris surrounded them, that the buildings had become public nuisances, and eventually that the buildings had been condemned."  2023 U.S. App. LEXIS 27217 at *1-*2.  "The first time the City did hear from Bruce, apparently, is when he filed this lawsuit, . . . more than two years after the buildings' demolition."  *Id.* at *2.  The Sixth Circuit held that the limitations "period began to run when Bruce knew or had reason to know of the injury which is the basis of his action.  A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Id.* at *3 (quotations omitted).  The Sixth Circuit concluded:

> We set to one side all the notices that the City sent to Bruce at a post-office box address that Bruce himself testified that he had used daily for 36 years;[4] perhaps a jury could believe that these particular notices somehow did not reach him there. . . . [A]s the district court rightly observed, a reasonable property owner – one who made any effort at all to stay apprised of his buildings' condition, for example, and to ensure that they remained in compliance with the municipal code – would have known that . . . his buildings had lain in heaps of rubble. Bruce's suit was therefore untimely, and the district court was right to grant summary judgment.

*Id.*

---

[4] The post office box referenced by the Sixth Circuit is the same post office box Plaintiff utilized here - P.O. Box 26018, Colorado Springs, Colorado 80936.  *See Bruce v. City of Miamisburg*, Case No. 3:21-cv-80, 2023 U.S. Dist. LEXIS 7232, *5 (S.D. Ohio Jan. 13, 2023).

Notably, in *City of Miamisburg*, the government's notices of intention to demolish buildings were returned to sender as undeliverable.  (*See id.*)  Here, there is no indication that any documents sent to Plaintiff's post office box were returned.  In fact, the certified mail receipt showed a that the February 2025 violation notice, along with the January 2015 violation notice, were signed for and received on March 28, 2015.  (Doc. 14-1 at 82 ¶ 8, 96-97.)  But as to that piece of evidence, Plaintiff argues that there is a genuine fact dispute.

The printed name below the signature line on the green card in the record appears to be "J. Wright."  (*See id.*)  Plaintiff attacks the evidentiary value of the green card as well as Commissioner Loconti's affidavit referring to the green card.

> Mr. Bruce does not know who signed for the "green card," but it was not him.  As such, Mr. Bruce did not sign for this delivery, it was not delivered to him, and he did not receive whatever was contained in the package that was mailed.  *See* Bruce Decl. at ¶¶ 8-9.  Furthermore, Mr. Loconti lacks personal knowledge to testify as to what was contained in the certified mail package that was mailed.  He states that the "Building Department" sent a mailing to Mr. Bruce, using passive voice, but does not testify that he sent the mailing or that he has personal knowledge as to what was contained in that mailing.  As such, there is no admissible evidence as to what was contained in the mailing.  *See* Fed. R. Evid. 901(a).

(Doc. No. 17 at 144.)

As to Plaintiff's latter point above, he criticizes the wording of Commissioner Loconti's affidavit and challenges Commissioner Loconti's personal knowledge and foundation.  (*See id.*)  However, the exhibit to the affidavit dispels Plaintiff's accusation.  Commissioner Loconti personally signed the Order of Nuisance Abatement on February 9, 2015.  (*See* Doc. No. 14-1 at 84.)  Commissioner Locanti also signed a certificate of service at the bottom of that same order, which reads:

> I hereby certify that I caused this Order of Nuisance Abatement to be served upon all owners and lien holders of real estate located at: 5254 Beech Avenue,

Maple Heights, Ohio on February 2, 2015,[5] in accordance with Section
1482.01© [*sic*] of the Codified Ordinances of the City of Maple Heights, Ohio.

(*Id.*)  The Order of Nuisance Abatement and certificate of service were signed by Commissioner
Loconti in February 2015.  This indicates that Commissioner Loconti would, indeed, have had
personal knowledge of what was being sent Plaintiff's post office box address in 2015.

Plaintiff presents no evidence to contradict the affidavit.  Rather, Plaintiff seizes only the
use of the passive voice in Locanti's reference to the Building Department sending out the Order
of Nuisance Abatement, rather than saying he did so himself.  (Doc. No. 17 at 144.)
Commissioner Loconti signed the Order and the certificate of service.  Both signature blocks
reflect he did so in his official capacity and as a representative of the Building Department.  (*See*
Doc. No. 14-1 at 84.)  It is undisputed is that Commissioner Loconti signed these documents and
mailed them as a representative of the Building Department.  That Commissioner Loconti
describes these actions as being completed by the Building Department does not create a genuine
issue of fact, let alone a material one.

This leaves only one purported fact dispute as a rationale for Plaintiff's opposition to
summary judgment.  Plaintiff says he did not receive the Order (or any other notice or
communication) and points to the green card's "J. Wright" signature as evidence to support his
contention.  "The evidence of the non-movant is to be believed, and all justifiable inferences are
to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

Nonetheless, this Court may set to the side the pre-demolition notices and orders that the
City says it sent to Plaintiff.  *See City of Miamisburg,* 2023 U.S. App. LEXIS 27217 at *2-3.

---

[5] Although the handwritten date of signature on the Order of Nuisance Abatement was February
9, 2015, the typed document throughout (including the certificate of service) refers to February 2
as the Order's effective date.

Even assuming Plaintiff did not receive any order or notice that the City was going to raze the Property, the demolition itself was notice enough to start the limitation clock ticking.  Knocking down a house is not a latent or surreptitious action.  Demolition of a house is open, noisy, and its effects are plain for the eye to see.  By October 2015, when the demolition occurred, Plaintiff was on notice that the City had taken or injured his Property.

"[T]he triggering event for the limitations accrual date for those claims is the date that [Plaintiff's] property was demolished."  *Jacks v. City of Youngstown*, No. 4:19-cv-2689, 2021 U.S. Dist. LEXIS 143358, 2021 WL 3288572, at *7 (N.D. Ohio Aug. 2, 2021).  In *Jacks*, the plaintiff's property was demolished in January 2016.  The plaintiff filed his complaint in November 2019.  In evaluating whether the statute of limitations had run on the plaintiff's claim, the court held that "[i]t is not reasonable for [the plaintiff], a real estate professional with 45 years of experience, to fail to visit his property or send an agent to visit his property for almost two years."  *Id*. at *7.  As the Sixth Circuit explained in another of this Plaintiff's lawsuits, "a reasonable property owner – one who made any effort at all to stay apprised of his buildings' condition, for example, and to ensure that they remained in compliance with the municipal code – would have known that, for the past [five years], his building[ ] had lain in heaps of rubble."  *City of Miamisburg,* 2023 U.S. App. LEXIS 27217 at *3.

Even though Plaintiff claims that he did not actually know about the demolition, that is a subjective assertion that does not save his claims.  It is settled law that if a reasonable person should have known of the injury, or destruction of his property rights, then that suffices for accrual of a Section 1983 cause of action.  *E.g., Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) (holding that the statute of limitations begins to run under federal law "when plaintiffs knew or should have known of the injury which forms the basis of their claims"); *Kuhnle Bros.,*

13

*Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) ("In determining when the cause of action accrues in section 1983 actions, [courts] have looked to what event should have alerted the typical lay persons to protect his or her rights."); *see also Boyer v. Clinton Cnty. Sheriff's Off.*, 645 F. Supp. 3d 815, 824 (S.D. Ohio 2022) (noting that "the district court decisions in this circuit that have discussed the issue largely appear to hold that a *Monell* claim accrues when the underlying injury occurs").

Based on the legal authorities discussed above, the Court concludes that Plaintiff should have known of the injuries of which he complains by October 2015 when the Property was demolished. The limitations period to file a Section 1983 claim to redress those injuries and his claims of inadequate notice expired two years later in October 2017. Plaintiff's lawsuit here was untimely as it was filed in February 2023. (Doc. No. 1.) Defendant's motion for summary judgment on limitations grounds is therefore granted.

### C. Standing

The doctrine of standing has three components: a plaintiff (1) must have suffered an injury in fact (2) that is fairly traceable to the defendant's actions and (3) that is likely to be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In a footnote, Defendant asserts that Plaintiff lacks standing:

> Contrary to the allegation contained in paragraph 7 of Plaintiff's February 24, 2023 Complaint, he is not the owner of the Premises. Attached hereto as Exhibit B is a Confirmation of Sale issued in Treasurer of Cuyahoga County, Ohio v. Douglas Bruce, et al., Case No. CV 19 926120, wherein Judge Sherrie Miday of the Cuyahoga County Court of Common Pleas finds that the Premises was foreclosed upon and sold to the City of Maple Heights Land Reutilization Program effective June 24, 2022.
>
> Separate and apart from the statute of limitations defense for which this Court granted leave to assert in this motion for summary judgment, summary judgment is also warranted for the reason that Plaintiff has no standing to

14

> assert his claims for relief since he currently does not own the Premises, and
> did not own the Premises at the time of the filing of his Complaint.

(Doc. No. 14 at 72 n.1.)  On reply, the City reiterates the "indisputable fact is that Plaintiff is not currently the owner of the Premises and was not the owner of the Premises at the time of filing suit." (Doc. No. 19 at 187.)

Defendant's standing argument fails for three reasons.  First, Defendant neither cites to nor relies on any legal authority for the position that standing necessitates current ownership. (*See* Doc. Nos. 14, 19.)  Second, Defendant concedes that Plaintiff owned the Property at the time the citations were issued, and structures were demolished.  (*See* Doc. No. 14.)  Third, the City does not argue that Plaintiff lacks standing to assert one or more particular causes of action or if he cannot assert any of his four claims.  In sum, the City's standing argument fails because "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation . . . are deemed waived" or forfeited.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quotation omitted).

Though Defendants supplied no caselaw in support of their challenge to standing, the Court has its own duty to assure itself of subject-matter jurisdiction.  "In an ordinary property case, the alleged injury, for example, flows directly from . . . a *per se* governmental taking of property without compensation . . . ."  *Norton v. Beasley*, No. 21-6053, 2022 U.S. App. LEXIS 33286, 2022 WL 17348385, at *8 (6th Cir. Dec. 1, 2022) (quoting *Horne v. Dep't of Agric.*, 569 U.S. 513, 526 n.6 (2013)).  A plaintiff in that situation has been divested of property before the lawsuit challenging the divestment is commenced.

In *Munaco v. Bank of Am.*, 513 F. App'x 508, 510 (6th Cir. 2013), a bank foreclosed on property.  The plaintiff did not file suit – in which he alleged improper procedures relating to foreclosure – until after the redemption.  *Id.* at 509-10.  Under the applicable state law, "once a

15

foreclosure is complete and the redemption period following the foreclosure has expired, a former owner loses all right, title, and interest in and to the mortgaged property." *Id.* at 510. Before the district court, the bank argued that the plaintiff lacked standing since he no longer owned the subject property. *Id.* at n. 2. The Sixth Circuit held that the plaintiff nonetheless "satisfies constitutional and prudential standing requirements for the reasons articulated in *Langley*." *Id.* In *Langley*, the district court explained: "Plaintiffs in such cases claim a continuing right to lawful ownership and possession based on defects in the process used by Defendants to divest them of those rights. This certainly seems to satisfy the basic Article III requirement of 'injury in fact,' as well as any prudential considerations tied to a 'zone of interests' analysis." *Langley v. Chase Home Fin., LLC,* No. 1:10-cv-604, 2011 U.S. Dist. LEXIS 32845, 2011 WL 1130926, at *2 (W.D. Mich. Mar. 28, 2011).

Defendant's motion and reply do not demonstrate that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff's claims here – while all untimely – are akin to process-related challenges in cases like *Munaco* and *Langley*. For these reasons, the Court declines to dismiss on standing grounds.

**III.** **Conclusion**

For the reasons above, Defendant's motion for summary judgment (Doc. No. 14) is GRANTED on statute of limitations grounds. Defendant's motion for extension of time to file a responsive expert report (Doc. No. 20) is DENIED as moot. This case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Date: May 21, 2024

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

16